**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, individually and on behalf of her minor child, ELENA DOE,<br><br>Plaintiffs,<br><br>-against-<br><br><br>PATCHOGUE-MEDFORD SCHOOL DISTRICT; and DR. ANTHONY DONATELLI, individually, LORI REILLY, individually, JESSICA LUKAS, individually, ANTHONY CRACCO, individually, and RANDY RUSIELEWICZ, individually,<br><br>Defendants. | CASE NO. 26-cv-137<br><br><br><br>**COMPLAINT**<br>JURY TRIAL DEMANDED |

Plaintiffs JANE DOE and ELENA DOE,[1] by their attorneys, GIBSON LAW FIRM, PLLC, as and for their Complaint, respectfully allege as follows:

**<u>PRELIMINARY STATEMENT</u>**

1. This is a civil rights action to redress a campaign of disability discrimination, medical coercion, and the unauthorized practice of medicine perpetrated by the Patchogue Medford School District ("the District") and its agents against a disabled student, Elena Doe. By overriding specific medical contraindications and substituting administrative fiat for professional clinical judgment, the District forced a vulnerable child into a medical procedure that resulted in catastrophic, permanent physical harm.

2. For a decade, Elena was granted consistent medical exemptions from immunization due to a documented history of life-threatening anaphylaxis from vaccines. For ten years, the

---

[1] Plaintiffs bring this action under the pseudonyms "**Jane Doe**" (individually) and "**Elena Doe**" (on behalf of her minor child) to protect the privacy of a minor student of color and to shield highly sensitive medical information. A motion for leave to proceed under pseudonyms will be filed hereafter.

District and its contracted Medical Director, Dr. Anthony Donatelli, accepted these exemptions without incident, recognizing the severe risk vaccines posed to Elena's health.

3.      In December 2024, District administrators with no medical licensure—specifically Defendants Jessica Lukas (Assistant Superintendent for Special Education), Anthony Cracco (Athletic Director) and Dr. Randy Rusielewicz (Principal)—arbitrarily revoked Elena's exemption. In doing so, they knowingly overrode the clinical judgment of Elena's long-term pediatrician and specialists.

4.      Defendants asserted they acted at the direction of Dr. Donatelli, who allegedly advised that the medical exemptions should be denied because Elena's "titers to MMR and Varicella were non-reactive." This reasoning is as medically illiterate as it is legally unsound. While a "reactive" titer might provide an alternative path to compliance, the *absence* of immunity does not somehow negate a clinical precaution or contraindication. By citing Elena's lack of immunity as a justification to deny her exemption, Defendants essentially held that because Elena was vulnerable to these diseases, she must be forced to undergo a medical procedure that her physicians had already certified would be life-threatening. In effect, they used her medically-necessitated lack of immunity as a weapon to override her underlying disability and the specific clinical warnings of her specialists.

5.      Dr. Donatelli lacked the authority to override these exemptions. The requests were certified by two New York-licensed physicians and complied strictly with N.Y. Public Health Law § 2164(8), which mandates an exemption when a physician certifies that immunization "may be detrimental to a child's health." The certifications set forth clear precautions and contraindications established by the CDC's ACIP committee and nationally recognized standards of care. Dr. Donatelli has never treated or examined Elena, and had no logical or medical basis to override her

treating physician's determinations, which were made in accordance with evidence-based standards.

6.    Moreover, regardless of Dr. Donatelli's opinion, Defendants Lukas, Cracco and Rusielewicz—who possess no medical license—had no legal authority to adjudicate the validity of Elena's clinical contraindications. By overriding the certifications of Elena's treating physicians and imposing their own "diagnosis" that vaccination was safe, these Defendants engaged in an extra-jurisdictional medical determination. Under New York law, diagnosing a physical condition or prescribing a medical course of action is reserved exclusively for licensed practitioners. By substituting lay opinion for clinical expertise, these administrators engaged in the unauthorized practice of medicine.

7.    This was not a "ministerial" application of the law; it was a discretionary and reckless override of medical necessity. Defendants Lukas, Cracco and Rusielewicz knew, or should have known, they lacked the competency to assess the risks of anaphylaxis or systemic inflammatory response. Their decision to condition Elena's fundamental right to an education on her submission to a dangerous medical procedure constituted a gross violation of her civil rights and an unlawful entry into the field of medical practice.

8.    Defendant nurse Lori Reilly furthered this campaign of discrimination by violating state and federal privacy laws. Ms. Reilly disclosed Elena's confidential health information to the Suffolk County Health Department for the express purpose of intimidating Elena's medical providers and chilling her access to care, while simultaneously harassing the child in a manner that caused severe psychological distress.

9.    Elena, burdened by multiple physical and emotional disabilities, became so distraught by the exclusion and harassment that she threatened self-harm. Facing the imminent risk

that their daughter might take her own life if she remained barred from school, her family felt they had no choice but to proceed with vaccination against the standing medical advice of her doctors.

10.    As a direct and proximate result, Elena suffered the catastrophic systemic inflammatory response her physicians had warned of. Among other issues, this anaphylactic reaction resulted in a meniscus torn in four places, requiring surgery and leaving a previously active child with a permanent mobility impairment.

11.    Not only that, but Defendants, unrepentant for the harm they caused, continue to harass and fail to accommodate Elena's mobility and academic and emotional needs, even though her need for accommodation was caused by their own actions.

12.    Ultimately, this tragedy was all too predictable, and school districts must be stopped from continuing such reckless policies. Because administrators chose to play the role of physician without a license, they forced a disabled child into a "choice" between her education and her life. This action seeks to hold the District and the individual Defendants accountable for the devastating consequences of their unlicensed, discretionary medical gatekeeping and ongoing disability discrimination.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

14.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Suffolk County, New York.

## PARTIES

16.    Plaintiff JANE DOE is a resident of Suffolk County, New York, and the mother and natural guardian of ELENA DOE, a minor child.

17.    Defendant PATCHOGUE-MEDFORD SCHOOL DISTRICT ("the District") is a municipal corporation in Suffolk County organized under the laws of New York and a recipient of federal financial assistance.

18.    Defendant DR. ANTHONY DONATELLI is a physician licensed in New York who served as the District's Medical Director. He is sued in his individual capacity for aiding and abetting disability discrimination under N.Y. Exec. Law § 296(6).

19.    Defendant LORI REILLY is a school nurse employed by the District. She is sued in her individual capacity for her role in harassing and retaliating against the family and the unauthorized disclosure of private health information.

20.    Defendant JESSICA LUKAS is the Assistant Superintendent for Special Education. She is sued in her individual capacity for her role in the unauthorized practice of medicine and for aiding and abetting disability discrimination.

21.    Defendant ANTHONY CRACCO is the District's Athletic Director. He is sued in his individual capacity for his role in the unauthorized practice of medicine and for aiding and abetting disability discrimination.

22.    Defendant DR. RANDY RUSIELEWICZ is the Principal of Patchogue-Medford High School. He is sued in his individual capacity for his role in the unauthorized practice of medicine, aiding and abetting disability discrimination, and as a final policymaker regarding Elena's exclusion.

## ADMINISTRATIVE PREREQUISITES AND TOLLING

23.     On January 9, 2025, within days of Elena's exclusion from school and the unauthorized disclosure of her medical data, Plaintiff filed a formal Dignity for All Students Act ("DASA") complaint and a HIPAA complaint with the District.

24.     This DASA filing provided the District with immediate **actual notice** of the essential facts underlying Plaintiffs' claims of discrimination and retaliation, thereby satisfying the functional requirements of General Municipal Law § 50-e and Education Law § 3813.

25.     On May 29, 2025, Plaintiffs served a formal Notice of Claim on the District.

26.     On December 1, 2025, the District exercised its right to a statutory hearing under General Municipal Law § 50-h, during which it conducted a six-and-a-half-hour deposition of Jane Doe on all subjects noticed in the May 2025 complaint as well as on subjects from a follow up notice offered to the attorneys for ongoing retaliation. As a result, the District has had a full and fair opportunity to investigate the claims and has suffered no prejudice.

27.     On December 19, 2025, Plaintiffs filed a Verified Petition in the Supreme Court of the State of New York, County of Suffolk (Index No. 634012/2025) for leave to serve late Notices of Claim for the original failure to accommodate and ongoing retaliation, failure to accommodate and harassment.

28.     Pursuant to CPLR § 204(a) and the holding in *Giblin v. Nassau County Medical Center*, 61 N.Y.2d 67 (1984), the statute of limitations for all state law claims against the District is tolled during the pendency of said petition.

29.     Plaintiffs intend to amend the complaint to add additional claims against the District once the petition is resolved.

## FACTUAL ALLEGATIONS

**History of Disability and Prior Medical Exemptions**

30.    Elena is a qualified individual with a constellation of disabling impairments including but not limited to a history of Lupus, Sjögren's antibodies (SS-A and SSB/Anti-La) suggesting a connective tissue disorder, chronic joint pain and fatigue, and severe allergies, anaphylaxis, urticaria and hives.

31.    Elena's impairments substantially limit major life activities, including but not limited to walking, standing, immune system reactions and her ability to safely take vaccines.

32.    Elena has had at least three documented, life-threatening anaphylactic allergies to vaccines and documented allergies to multiple vaccine components, including but not limited to a severe allergy to cow's milk and beef protein, as well as egg whites and egg yolks and many vaccine excipients. She also suffers from hypersensitivity to chemicals such as Latex, Titanium, Nickel, and Methyldibromo Glutaronitrile, which are used in vaccine manufacturing.

33.    Elena's first anaphylactic reaction to vaccines happened when she was a baby and she had another documented severe anaphylactic reaction in 2014 when she was four to another vaccine. In accordance with CDC recommendations and the advice of her physicians, she has had a long-standing medical exemption since preschool to most vaccines.

34.    These exemptions have been accepted for almost a decade by the Patchogue-Medford School District, where Dr. Donatelli has been the reviewing contract physician for many years.

35.    On October 17, 2022, Elena's father took her to a well visit with a new provider and consented to administration of the Tdap vaccination, which Elena's regular pediatrician did not recommend due to her previous reactions and underlying condition. Within 48 hours, Elena suffered a systemic reaction including "all over" hives, dizziness, nausea, and severe edema in her ankles and knees that left her unable to walk without pain. Medical evaluations following the 2022

Tdap vaccination also confirmed edema and tenderness in her knees, which treating physicians diagnosed as an "allergic reaction to Tdap." This was Elena's third anaphylactic reaction to vaccines.

36.     Based on her history of life-threatening reactions to both live and inactivated vaccines, severe allergies and anaphylaxis, and underlying autoimmune markers and other moderate to severe illness, Elena's pediatrician continued to recommend that Elena stop all further vaccination from that point on. Her medical exemptions were accepted in 2022 and 2023. The December 7, 2023 exemption noted that Elena had experienced severe throat swelling and hives after Tdap.

37.     On December 6, 2024, Elena's same pediatrician, a New York State licensed physician who had treated her since childhood, submitted an updated annual exemption statement for MMR, Varicella, Tdap and Meningococcal vaccines, citing Elena's severe allergic reactions to vaccines and vaccine ingredients.

**The Arbitrary Denial and Medical Pretext**

38.     In late December 2024, Dr. Donatelli abruptly and arbitrarily revoked Elena's longstanding exemption, asserting that he spoke to her provider and determined that Elena needed to provide confirmation from an allergist that she should be exempt before he would accept her exemption request for the remainder of the year.

39.     Nurse Reilly informed Jane that she had to get confirmation from an allergist on or before January 3, 2025 or Elena would be barred from returning to school.

40.     Jane got the first allergist appointment she could find. On January 2, 2025, Elena was evaluated and the allergist submitted a letter confirming her history of anaphylaxis, that it was not safe to vaccinate Elena, and that Elena required accommodation in accordance with nationally

recognized evidence-based standards of care. The allergist's office also confirmed that Elena was going through serological testing to determine if she had titers to any vaccines, which was an independent basis for allowing her to remain in school pending an investigation.

41.    When Elena attempted to go to school on January 3, 2025, Nurse Reilly excluded her and informed Jane that she needed to submit an entirely new application on the New York State medical exemption form, not just a corroborating letter from the specialist.

42.    Jane went to the allergist's office and begged for an appointment. The provider who had been on duty the day before was not in on January 3, 2025, and Jane was told that she could not get an appointment that day. She cried and begged them to reconsider and camped out in the office until another allergist, who was a New York licensed physician and specialist, took pity on her and reviewed the files. He immediately agreed that Elena needed an exemption and wrote a medical exemption on the proper form. Jane immediately provided this follow up exemption request to the school on January 3, 2025.

43.    Elena was supposed to be able to attend school while the District was reviewing the follow-up submission from the specialist. But Nurse Reilly informed Jane that she would be sending the request on to the school district doctor and Elena could not attend in the meantime.

44.    Several more days went by and Jane started to get notices that her daughter's absences were being marked as unexcused, and she may not be able to complete the semester.

45.    Jane tried repeatedly to bring Elena to school but each time, Nurse Reilly immediately pulled her out of classes, humiliating her and putting her in "quarantine" until her mother came to pick her up.

46.    On or about January 9, 2025, when Jane had to leave work to pick her daughter up in one such instance, Nurse Reilly informed Jane that she had sent her daughter's private medical

information, unredacted, to the Suffolk County Health Department and that the local health department would be calling her providers to deny her request.

47. The Suffolk County Health Department has no authority to deny medical exemption requests, and the nurse had no authority to send documents to them unredacted.

48. Nurse Reilly insinuated that she had made these unauthorized disclosures to ensure that the providers were investigated and intimidated from continuing to recommend exemption.

49. Upon information and belief, the health department inquiries and audits had a chilling effect on ongoing access to care with the office and on the doctor-patient relationship.

50. Jane's doctor at the allergy practice told Jane shortly afterwards that they were being audited for the first time in twenty years of practice and seemed hesitant to provide further care.

51. Similarly, after being harassed by the District and intimidated by Dr. Donatelli, Elena's pediatrician, who had saved her life as a baby administering the epi pen on one particularly bad incident of anaphylaxis, and written exemptions since preschool, said she would not write any more exemptions for Elena for fear of retaliation by the District.

52. Jane called Tom Thorne, who oversees the Suffolk County Department of Health. He affirmed that the local health department had no ability to recommend or deny medical exemptions and should not have received private health records from Nurse Reilly.

53. Jane then filed a DASA complaint and a HIPAA complaint on or about January 9, 2025, explaining that the District's denial of accommodation and retaliatory submission of private health records violated multiple laws.

54. The District placed Dr. Rusielewicz and Anthony Cracco in charge of the DASA investigation. On January 10, 2025, Jane received an email informing her that her complaint was

denied. The reason provided was "This information falls under Public Health Law 2164. District Physician, Dr. Anthony Donatelli has verified that our compliance with this law can be reviewed by the Department of Health."

55.     Nothing in the law authorizes schools to disseminate unredacted medical records to local departments of health or to weigh in on medical exemption requests.

56.     On January 13, 2025, Jane received a formal and final medical exemption denial from Ms. Lukas (who is not a medical doctor). The determination stated that the medical exemptions submitted in December 2024 and January 2025 were denied. Dr. Lukas held herself out as the final decision-maker and stated, "please be advised that in order to assist me in making a determination regarding your medical exemption, the District requested an opinion from the District's Medical Director. The District was advised that your medical exemption not be accepted because your child's titers to MMR and Varicella were nonreactive."

57.     Based on that opinion, Ms. Lukas asserted that she "determined that your child is not entitled to a medical exemption." By her own admission, Dr. Lukas—an administrator with no medical license—personally performed the adjudication of Elizabeth's clinical precautions and contraindications. She further detailed the "medical basis" for her denial, stating the District was advised to reject the exemption "because your child's titers to MMR and Varicella were non-reactive."

58.     In so doing, Dr. Lukas engaged in an extra-jurisdictional medical determination, substituting her administrative authority for the clinical judgment of New York State licensed physicians and improperly concluding that a lack of immunity somehow invalidated their certification that the Elena should be exempt because vaccination "may be detrimental to the child's health."

59.     This determination was reckless and medically unsound. A lack of immunity (low titers) is a clinical certainty for a child who cannot safely vaccinate; using it as a reason to force vaccination creates a life-threatening "Catch-22."

60.     Had Ms. Lukas been a medical doctor, she would have known that lack of titers does not negate a risk of harm for a vulnerable child with a history of severe anaphylaxis on three occasions to vaccination, and a severe allergy to multiple components of her missing vaccines.

**Injuries Resulted from Forced Vaccination**

61.     When she received the denial, Elena had already been excluded from school for two weeks. She was despondent and severely depressed and anxious.

62.     Elena told her family that she would harm herself if she was not able to go to school. Fearing self-harm or suicide, the family did not know what to do. Faced with a real possibility of harm or death no matter what they did, they felt they had not choice but to get Elena vaccinated so she could return to school.

63.     The District fought them every step of the way, obstructing reasonable requests to safely space out the doses. Jane had to hire an attorney just to get basic accommodation in accordance with CDC standards.

64.     Elena started receiving vaccines immediately on or about January 13, 2025 but the school would not let her come back.

65.     It was only after Jane spent thousands of dollars, which she could not afford on her bus driver's salary, that she was able to get the school to allow Elena to return to school on January 22, 2025.

66.     Elena had mild reactions to the first few vaccine doses she took. However, the MMR set her over the edge.

67.     Post-MMR vaccination, Elena suffered a catastrophic inflammatory response, which increased to the point that she could not walk, had severe pain and swelling in her knees and ankles, and her meniscus tore from the inflammation in four places.

68.     Unable to heal on her own, Elena had to get knee surgery on May 31, 2025.

69.     Because of her vaccine injuries last Spring, Elena missed a lot of school for medical reasons, which the District is still penalizing her for. They refused and continue to refuse basic mobility accommodations like being able to come late or early to avoid lines at the security check, and refuse to remedy zeros and "unexcused absence" records that the District had agreed to fix when Jane was represented by counsel.

70.     The District's failures to accommodate her disabilities are cruel and senseless. When Elena was in a wheel chair and unable to walk when her sister graduated in the Spring of 2025. The District failed to accommodate Elena and her family at the graduation, refusing to allow Elena to be dropped off at the entrance, and refusing to provide any transportation from the parking area. By the time the family arrived, they were harassed, ridiculed and forced to sit outside while Elena's sister received her diploma.

71.     Elena is to this day unable to resume normal functions in her legs. Each morning, due to ongoing inflammation and injury from the anaphylactic reaction from the contraindicated vaccine, she cannot put weight on her feet for at least 1-2 hours, and requires various interventions to get the swelling to come down so she can start her day. An A student, Elena is often unable to start classes immediately, yet the District will not accommodate her need for adjustments to her schedule and keeps marking her tardy.

**Known Medical Risks**

72.     Elena's resulting anaphylactic adverse reaction and injuries were entirely

predictable.

73.     The FDA-approved manufacturer's package insert for the MMR vaccine explicitly acknowledges that the vaccine can cause acute and chronic joint swelling and arthralgia, particularly in children over the age of 12, even for children without the severe inflammatory reactions Elena was documented as having.

74.     Despite Elena's age (fifteen) and documented history of multi-vaccine anaphylaxis, Defendants demanded she be vaccinated by January 9, 2025, or face permanent exclusion.

75.     Anaphylaxis from previous doses, and allergy to one or more vaccine components are also contraindications well documented in ACIP and other nationally recognized evidence based standards of care, and Elena had several other known precautions and contraindications as well.

**Dr. Donatelli**

76.     Dr. Donatelli is notorious on Long Island for denying valid medical exemptions.

77.     He represents over fifteen school districts and makes at least a million dollars a year for this work.

78.     Patchogue and other Districts have received numerous complaints about Dr. Donatelli's negligent and reckless medical exemption policies, which the District adopts as their official policy.

79.     Dr. Donatelli has asserted that he believes he has authority to override treating physicians because regulatory guidance issued by the NYSDOH defined what "may be detrimental to a child's health" as requiring that **<u>a physician</u>** certify that the child has a precaution or contraindication consistent with the CDC's ACIP guidance or other nationally recognized evidence based standards of care.

80.     Dr. Donatelli was on notice that this definition applies more broadly than just to a

rigid checklists of conditions listed as non-exhaustive examples in the ACIP guidance. Yet, he continues to insist that he will only accept conditions listed as examples of a contraindication on ACIP, and even then, must substitute his judgment over the providers about whether he thinks those conditions should really merit protection even if listed.

81.    Dr. Donatelli knew or should have known that Elena could not safely be vaccinated and required exemption. After all, he had granted her requests for years.

82.    Neither Dr. Donatelli nor the District had any basis to override Elena's treating physicians and condition her access to accommodation on violating the advice of her treating physicians.

### FIRST CAUSE OF ACTION

### Disability Discrimination & Failure to Accommodate

### (Against Defendant District — 42 U.S.C. § 12132 (ADA) & 29 U.S.C. § 794 (Section 504))

83.    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

84.    Plaintiff Elena is a "qualified individual with a disability" who suffers from severe physical and emotional impairments, including life-threatening anaphylaxis and systemic inflammatory conditions.

85.    The District is a recipient of federal financial assistance and a "public entity" subject to the mandates of the ADA and Section 504.

86.    The District discriminated against Elena by failing to provide reasonable accommodations—specifically, the medical exemption certified by her physicians—and by excluding her from educational services and access to events like graduation based on her disability-related needs.

87. As a direct and proximate result of these federal violations, Elena suffered catastrophic physical and psychological harm.

## SECOND CAUSE OF ACTION
### Violation of Substantive Due Process (14th Amendment 42 U.S.C. § 1983)
### (Against Defendants District, Donatelli Lukas, Rusielewicz, and Cracco)

88. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

89. Jane and Elena have a fundamental right to refuse medical interventions, including vaccination, especially where Elena's treating physicians have determined that they place her at increased risk of harm or death.

90. This right encompasses the fundamental right to refuse medicine, fundamental parental rights, bodily integrity and the fundamental right to protect ones self and one's child from harm.

91. Because fundamental rights were at stake, strict scrutiny applies.

92. Under the "Unconstitutional Conditions Doctrine," as reaffirmed in *Mahmoud v. Taylor* (2025), the State may not condition the public benefit of education on the forfeiture of fundamental parental rights to direct a child's medical upbringing.

93. Defendants violated this right by imposing a medical mandate that substantially interfered with the Plaintiffs' ability to protect Elena's physical safety by conditioning access to school on the violation of medical advice from treating New York State physicians.

94. Because Defendants' revocation of the exemption was a discretionary, extra-jurisdictional act that overrode licensed medical certification, their actions fail strict scrutiny.

## THIRD CAUSE OF ACTION
### Unauthorized Practice of Medicine & Negligence Per Se
### (N.Y. Educ. Law § 6521 & CPLR 4504(d))
### (Against Lukas, Defendants Rusielewicz and Cracco)

95. Plaintiffs repeat and reallege each and every allegation contained in the preceding

paragraphs of this Complaint as if fully set forth herein.

96.     By adjudicating the validity of clinical contraindications and determining that it was "safe" for Elena to be immunized against the advice of her doctors, and prescribing that she must do so to attend school despite her doctors' advice, Defendants Rusielewicz and Cracco engaged in the practice of medicine without a license.

97.     Pursuant to CPLR 4504(d), the fact that a person practiced medicine without being authorized to do so constitutes prima facie evidence of negligence in an action for damages for personal injuries.

98.     This is such an action for personal injuries due to the negligent and reckless disregard of the District and its' named individual employees who participated in this unauthorized practice.

99.     Defendants' unauthorized medical determination was the direct and proximate cause of Elena's catastrophic systemic inflammatory response and permanent mobility impairment.

**FOURTH CAUSE OF ACTION**
**Disability Discrimination & Aiding and Abetting**
**(Against Defendant Donatelli — N.Y. Exec. Law § 296(6))**

100. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

101. Defendant Dr. Donatelli is liable under N.Y. Exec. Law § 296(6) for aiding and abetting the District's discriminatory conduct by providing a medically and legally deficient "titer" rationale used to improperly exclude a disabled child.

**FIFTH CAUSE OF ACTION**
**Common Law Gross Negligence**
**(Against All Individual Defendants)**

102.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

103. Defendants breached their duty of care by recklessly disregarding established clinical standards and forcing Elena to undergo a medical procedure they were specifically warned would result in catastrophic harm.

104. Defendants' conduct was so reckless and showed such a complete disregard for Elena's safety as to constitute gross negligence, thereby overcoming any assertion of qualified or discretionary immunity.

## SIXTH CAUSE OF ACTION
### Violation of the Right to Privacy & Retaliation
### (Against Defendant Reilly and Donatelli — 42 U.S.C. § 1983)

105. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

106. Defendant Reilly violated Elena's constitutionally protected right to privacy by disclosing confidential health information to the County Health Department for the express purpose of intimidating her medical providers.

107. Dr. Donatelli encouraged and abetted this intimidation and further intimidated Plaintiff's pediatrician by calling her and threatening her.

108. These actions were a retaliatory act designed to "chill" Elena's access to medical care and punish the family for seeking a reasonable accommodation.

WHEREFORE, Plaintiffs demand judgment against Defendants for declaratory and injunctive relief as well as nominal, compensatory, actual and punitive damages, along with pre- and post-judgment interest, attorneys' fees, and such other relief as the Court deems just.

Dated: Ithaca, New York
        January 9, 2025

                                        Respectfully Submitted,
                                        Gibson Law Firm, PLLC

By: */s/ Sujata S. Gibson*
Sujata S. Gibson, Esq.
120 E Buffalo Street, Suite 2
Ithaca, NY 14850
(607) 327-4125
sujata@gibsonfirm.law

**Attorneys for the Plaintiffs**